**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MISSOURI**

**EASTERN DIVISION**

| | |
|---|---|
| **ROBERT MCCRARY** | **JURY TRIAL DEMANDED** |
| **AND** | |
| **KENNETH C. THOMPSON TRUSTEE OF THE KENNETH C. THOMPSON LIVING TRUST U/A DTD 3-27-92** | |
| **AND** | **Case No. 4:10-CV-00295 CEJ** |
| **KENNETH C THOMSPON AS BEBEFICIARY OF THE KENNETH C. THOMPSON IRA** | |
| **PLAINTIFFS** | |
| **AND ON BEHALF OF OTHERS SIMILARLY SITUATED** | |
| **V.** | |
| **STIFEL,NICOLAUS & COMPANY, INCORPORATED .** | |
| **et al.** | |

**MEMORORANDUM IN OPPOSITION TO MOTION**

**FOR EXTENSION OF TIME BY STIFEL**

This Counsel shall always attempt to conduct himself in a civil manner not only as a matter of professional ethics and courtesy, but also as reminded by this Honorable Court's web page.

Certainly this Counsel has no objection to an extending an extension of time for Stifel to respond, especially in light of the holiday weekend. However, Counsel does have an objection to Stifel omitting to disclose in its Motion for Extension the true procedural status of the case In fact, Stifel has waived any rights to arbitration in this matter by failing to file a Motion to Dismiss under Fed R. Civ Pro Rule . When Plaintiff's sought leave to amend to include Mr. Thompson's claims under the Federal Securities Exchange Act of 1934, after meeting and conferring with counsel for Stifel, this Counsel Moved to Dismiss without prejudice the pending FINRA action. At the same time, Stifel's counsel filed an Opposition to Mr. Thompson's Motion to Dismiss.

The Motion for Extension filed in this Honorable Court is for the purpose of proceeding with FINRA arbitration in the case of **Thompson v. Stifel** ,FINRA No. 09-03580 and is proceeding, in violation of FINRA Rule 122204, express regulations duly promulgated by the SEC and the PSLRA. The PSLRA was enacted to curb abusive filings. The PSLRA creates a presumption that the Plaintiff with the greatest financial interest, in the instant case, Mr. Thompson should be lead Plaintiff. 15 U.S.C. 78u-4. In addition

**12204. Class Action Claims**
**The Customer Code applies to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Customer Code apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new Code.**

(a) Class action claims may not be arbitrated under the Code.

(b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(1) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court;

(2) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(c) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

- The class certification is denied;
- The class is decertified;
- The member of the certified or putative class is excluded from the class by the court; or
- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court .

This paragraph does not otherwise affect the enforceability of any rights under this Code or any other agreement.

Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2003-158 eff. April 16, 2007.

**Selected Notice:** 07-07, 08-57.

While purporting to seek an Extension from this Court because of the complexities of the PSLRA 15 U.S. C. 77u-4, this issue is not complex at all. Stifel has filed an Opposition to Mr. Thompson's Motion to Dismiss in the FINRA action filed by Mr. Thompson before this matter was filed by Mr. McCrary and removed to this Court by Stifel. Under the express terms of the PSLRA, a presumption exists that Mr. Thompson should be lead Plaintiff.

The Motion to Dismiss is contrary to this FINRA Rule12204 which exempts class actions and putative class actions from arbitration proceedings by means of counter factual statements as discussed below. Stifel has continued to issue subpoenas in the FINRA case to Mr. Thompson's

accountant and at the same time, and failing to make discovery as promised, continuing to insist that the Harrison exception reports be subject to a confidentiality order, and not producing same.

To fail to inform the Court of the pendency of the FINRA matter, its Opposition to Mr. Thompson' Motion to Dismiss without prejudice the arbitration filed before the McCrary class action which Stifel removed to this Court is an attempt to authority by a preemptive strike before the FINRA panel and to try to defeat the jurisdiction of this Court under the Federal Securities Exchange Act and under the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq.

As recently recognized by the District Court of Minnesota**, Bakas v. Ameriprise Financial Services, Inc.**, 651 F.Supp.2d 997 (D. Minn. 2009):

Bakas is correct that the rule states that a FINRA "member may not enforce any arbitration agreement against a member of a certified or putative class action." FINRA Code § 12204(d) (last visited September 2, 2009) (emphasis added). But FINRA's rules define the term "member" as "any broker or dealer admitted to membership in FINRA." See id. § 12100(r) (last visited September 2, 2009) (emphasis added). Hence, it is clear that the rules refer to the activities of a broker/dealer, not an investment adviser, when precluding arbitration by a "member." The Eighth Circuit has recognized this distinction. See **Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,** 264 F.3d 770, 772 (8th Cir. 2001) (noting that member of NASD (FINRA's predecessor) "did not, by virtue of its membership in NASD, agree to arbitrate this . . . dispute over fees for giving financial advice apart from brokerage services").

Although the Court in Bakas ordered arbitration; Bakas claim was based upon the Investment Advisor's Act of 1940 which is not to FINRA Rule 122804. Stifel should have filed a Motion to Compel Arbitration in this Court as soon as the First Amended Petition was filed and before this Honorable Court granted Leave to Amend to file its First Amended Complaint.

In the first instance under the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. it is for this Honorable Court to determine arbitrability and under the Federal Securities Exchange Act including the PSLRA Amendments. See for e.g. **Shearson v. American Express v. McMahon,** 482 U.S. 220 (1987), **Matruobono v. Shearson, Lehman, Hutton Inc.** 514 U.S. 52 (1995),

Most recently, the United States Supreme Court held that: Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. See id., at 943-946 (holding that a court should decide whether the arbitration

contract bound parties who did not sign the agreement); John Wiley & Sons, Inc. v. Livingston, 376 U. S. 543, 546-547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, e. g., AT&T Technologies, supra, at 651-652 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); Atkinson v. Sinclair Refining Co., 370 U. S. 238, 241-243 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement).

At the same time the Court has found the phrase "question of arbitrability" not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus "`procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator, to decide. John Wiley, supra, at 557 (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration). So, too, the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital, supra, at 24-25. Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate
[537 U.S. 85]
the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c), and comment 2, 7 U. L. A. 12-13 (Supp. 2002). And the comments add that "in the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability, i. e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." Id., § 6, comment 2, 7 U. L. A., at 13 (emphasis added).

Following this precedent, we find that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be "questions of arbitrability." E. g., Moses H. Cone Memorial Hospital, supra, at 24-25 (referring to "waiver, delay, or a like defense"). Such a dispute seems an "aspec[t] of the [controversy] which called the grievance procedures into play." John Wiley, supra, at 559.

Moreover, the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it. In the absence of any statement to the contrary in the arbitration agreement, it is reasonable to infer that the parties intended the agreement to reflect that understanding. Cf. First Options, 514 U. S., at 944-945. And for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy—a goal of arbitration systems and judicial systems alike.

We consequently conclude that the NASD's time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called "questions of arbitrability."

.

**Howsam v Dean Witter Reynolds**,537 U.S. 79 84-86 (2002)

First, it must be noted that only the Eight Circuit and this Court as set forth below have addressed the interpretation of the PSLRA, SLUSA or the Security and Exchange Commission's plenary authority over NASD or FINRA in the class action context under the Federal Arbitration Act. Prior authority from other Circuits and courts within this Circuit does address that the NASD (now FINRA) has no standing to contest the Securities and Exchange Commission in the adjudicative context **National Ass'n of Securities Dealers, Inc. v. S.E.C**., 431 F.3d 803, 812 ( D.C. Cir. 2005) Second, waiver is an issue here. See **Parler et al v. KFC**, **529 F.Supp.2d 1009 (D.Minn. 2008).**

Finally in the class action context addressing antitrust claims the United States Court of Appeals for the Second Circuit, held that the interest of class members whose claims are too small to litigate, was a bar to arbitration of a class action **In re American Express Merchant's Litigation** 554 F.3d 300, 313-314 (2d Cir. 2008)

The Supreme Court has at least implicitly held that a provision in an arbitration agreement barring class procedures is not per se unenforceable because, as noted above, it held in Bazzle that the question of whether or not an ambiguous arbitration clause contained a class action ban was a matter for the arbitrator, not the court, to decide. 539 U.S. at 453, 123 S.Ct. 2402. Beyond this oblique ruling, however, the Supreme Court has yet to squarely face the question of whether or not there are conditions under which a class action ban would be incompatible with the FAA. But, as both parties here acknowledge, the Court has decided cases which involved matters which, if ancillary, are certainly pertinent to this question.

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), involved a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Specifically, the plaintiff, a manager at a brokerage firm, asserted that he had been terminated by the firm in violation of the ADEA. Id. at 23, 111 S.Ct. 1647. After the plaintiff had filed suit in federal district court, the defendant firm moved to compel arbitration pursuant to a mandatory arbitration provision contained in the rules of the New York Stock Exchange ("NYSE"), to which the plaintiff had agreed to be bound when he became a registered securities representative. Id. at 23-24, 111 S.Ct. 1647.

The Court held that because "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement," the arbitration clause was enforceable "`unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" Id. at 26, 111 S.Ct. 1647 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Even though the Court acknowledged

that "the ADEA is designed not only to address individual grievances, but also to further important social policies," id. at 27, 111 S.Ct. 1647, the Court could discern no Congressional intent to preclude ADEA claims from being subject to arbitration. The Court also considered the plaintiff's argument to the effect "that arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for broad equitable relief and class actions." Id. at 32, 111 S.Ct. 1647. The Court rejected this contention:

As the court below noted, however, arbitrators do have the power to fashion equitable relief. Indeed, the NYSE rules applicable here do not restrict the types of relief an arbitrator may award, but merely refer to "damages and/or other relief." The NYSE rules also provide for collective proceedings. But even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the ADEA provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.

Id. (citations, internal quotation marks, and brackets omitted).

In the **AMEX** case the NYSE rules expressly allowed for class actions. Now that FINRA has consolidated the NYSE, AMEX and NASD, the clear import is that this is a threshold question for the Court, not a FINRA panel. This is not a question for which a FINRA panel has superior fact finding competence or expertise. Indeed FINRA has expressly proscribed the enforcement of arbitration agreements when a putative class action is pending in FINRA Rule 12204.

The United States Court of Appeals for the Eight Circuit has addressed this issue before See **Piper Funds, Inc., Institutional Government Income Portfolio Litigation**, 71 F.3d 298 (8th Cir. 1995) and in **Green v. Ameritrade, Inc.,** 279 F.3d 590 (8th Cir. 2002).

In fact Judge Heaney cited the complex interplay among the provisions of SLUSA, the PLSRA, in affirming the issuance of an injunction against among other things state court actions and alternative dispute resolution:

The court concluded that PSLRA's lead-plaintiff provisions created new federal rights for certain plaintiffs in securities class-action lawsuits. Specifically, the court noted that the PSLRA, in response to abuses by professional plaintiffs and their attorneys, vested the control over such litigation in the plaintiff with the greatest financial stake, thereby eliminating the "race to the courthouse" system. The court further noted that the federal plaintiffs represented more than

twenty-six times the amount of stock represented by the Desmond plaintiffs, and that the Desmond plaintiffs had entered settlement negotiations after only "minimal written discovery and document exchanges" and before taking a single deposition. BankAmerica II, 95 F.Supp.2d at 1050.

Singling out Milberg Weiss, the court chastised the firm for engaging in "precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent." Id. In the district court's view, the Desmond case was "nothing more than a thinly-veiled attempt to circumvent federal law." Id.

The district court concluded that the federal right of control by the greatest stakeholder could not "be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, [could] institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims." Id. at 1049.

The court granted a broad injunction that (1) barred the named Desmond plaintiffs from prosecuting any class action claims arising out of the BankAmerica merger; (2) barred the California court from certifying any Desmond plaintiff classes; (3) barred the California court from ordering any alternative dispute resolution in Desmond and directed the court to stay any alternative dispute resolution that had already been ordered; (4) established procedures for the Desmond plaintiffs to opt out of any class certified by the federal court in order to pursue individual actions. Id. at 1053-54. **Desmond v. BankAmerica Corp**., 263 F.3d 795, 798-201 (8th Cir. 2001)

As noted by Judge Nangle in **BankAmerica Corp. Securities Litigation**, 95 F.Supp.2d 1044,

1049, 1051 (E.D. Mo. 2000)(emphasis supplied).

The federal securities laws clearly create private rights of action at equity or at law to enforce liabilities or duties imposed under those statutes. 15 U.S.C. §§ 77v(a), 78r(a). In 1995, Congress passed the Private Securities Litigation Reform Act (PSLRA) to correct abusive practices in the prosecution of securities law class actions. H.R. Conf. Rep. No. 104-369, at 32-35 (1995). The passage of the PSLRA created new federal rights for certain plaintiffs in securities class action suits.

Prior to the passage of the PSLRA, the first plaintiff to file suit was typically selected to serve as class representative. *Id.* at 33. This "race to the courthouse" mentality resulted in class actions controlled not by real plaintiffs with a substantial interest in the case but by professional plaintiffs and their attorneys. *Id.* at 32-33. **To curb the use of strike suits by such plaintiffs and their attorneys, the PSLRA provides that the most adequate plaintiffs, those with the largest financial interest in the relief sought by the class, shall be appointed lead plaintiffs. 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).** Plaintiffs seeking to be lead plaintiff must certify that they did not purchase the security at the direction of counsel or in order to participate in any private action arising under the securities laws. 15 U.S.C. §§ 77z-1(a)(2)(A)(ii), 78u-4(a)(2)(A)(ii). Further, no person may serve as lead plaintiff in more than five securities class actions in any three-year period unless the court permits otherwise. 15 U.S.C. §§ 77z-1(a)(3)(B)(vi), 78u-4(a)(3)(B)(vi). Finally, the plaintiff selected as most adequate plaintiff has the right to select class counsel subject to the approval of the court. 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).

Clearly, the PSLRA creates rights in plaintiffs possessing the greatest financial stake in the litigation. They have the right to be appointed lead plaintiffs, to control the course of the class action litigation, and to select class counsel of their choice. This federal right cannot be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, can institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims.[5]

Unlike **Piper,** where our Eighth Circuit held that an unwilling member of a class could not be compelled to litigate its claims and sustained the motion to compel NASD litigation by a customer, this is contrary to the PSLRA, SLUSA, prior court decisions and the SEC's own directives. **Nielsen v. Piper, Jaffray, Hopwood,** 66 F.3d 145, 148-150 (7th Cir. 1995)

The only question is whether amended NASD rule 12(d) was in effect at the time relevant to this dispute. By statute, proposed rules from national securities exchanges and registered securities associations, such as NASD, are effective upon SEC approval. 15 U.S.C. Sec. 78s(b)(2). When itadopted the amended rule on October 28, 1992, the SEC stated that it would apply to "all open arbitrations and to all arbitration filings made on or after" the date of approval. The SEC did not define the term "open arbitration," but clearly this refers to arbitrations which were in progress before an arbitration panel at the time the SEC approved the rule. Although an arbitration was not yet in progress here, the phrase "arbitration filings made on or after that date" is pertinent. Filing a motion with the district court requesting it to compel arbitration is not the same thing as filing a request for arbitration before the appropriate arbitral forum. When the district court granted PJH's motion to compel arbitration on August 30, 1993, the next step would be to submit the matter to the NASD--that is, make an "arbitration filing." And since any such filing here would occur well after October 28, 1992--the date the SEC approved the NASD rule--it would occur after the effective date of the amended rule and thus would be barred. Hence, we express no opinion as to the magistrate judge's holding that amended Rule 12(d) was to apply retroactively (because PJH did not raise this argument in its brief to this court), but instead conclude that the rule was in effect at the point PJH would have made an arbitration filing, which is a sufficient basis to say that it prohibited PJH from seeking arbitration of Kostantacos' claims.

PJH raises several arguments against our conclusion that its own contract prohibited arbitration; but since most of them are based on mere snippets of the parties' agreement rather than a fair reading of the agreement as a whole we can be brief in our disposition of them. Typical of these is PJH's first argument that since the arbitration clause requires arbitration "to the fullest extent provided by law," this requires arbitration of all of Kostantacos' claim regardless of the amended rules. But the extent of the "law" of arbitration was cut back by the SEC when it pronounced that claims which had been previously filed as a class action or were encompassed by a class action were now ineligible for arbitration. In other words, in adopting these rules the SEC placed these types of claims outside the reach of otherwise enforceable arbitration agreements. [3] PJH specifically agreed that its right to arbitrate would be delineated by

the law of arbitration in effect at the time arbitration was sought. Moreover, PJH also agreed in Paragraph 9 that the agreement would incorporate all intervening statutes and regulations that affected or were inconsistent with provisions in the parties' agreement. The SEC changed the law so that PJH's arbitration agreement could no longer be enforced against Kostantacos. Thus, pursuant to its own agreement, PJH could not pursue arbitration.

This conclusion disposes of the bulk of PJH's remaining arguments. Yet one does deserve our attention. We find it buried in a footnote in PJH's initial brief. PJH points out that the district court denied Kostantacos' motion for class certification. Since the SEC's new rule does not prohibit arbitration against a member of a class action where class certification has been denied, see NASD Rule 12(d)(3)(A), PJH suggests that arbitration of Kostantacos' claim was appropriate. We disagree. Although the district court did not say why it denied the motion for class certification, we can only assume that it was because of its previous order compelling arbitration, which prevented Kostantacos' participation in the purported class. See Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 n. 5 (11th Cir.), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1987) (securities purchasers whose claims are subject to arbitration are not to be considered members of the class); 3B Moore's Federal Practice p 23.04 at 23-106 to 23-107 (2d ed. 1995) (to have standing to represent the class the plaintiff-representative must be a member of the class).

However, by application of the new rule and the language of the parties'agreement, the order compelling arbitration should never have been granted in the first place. Thus, PJH cannot bootstrap the district court's order denying certification as a means to avoid a clear-cut application of the SEC's rule which was incorporated into the parties' agreement and which was in full force at the time the district court ordered the matter to arbitration. Should the district court, in ruling on Kostantacos' renewed motion for class certification, reaffirm its initial determination to deny class certification--for example, because of lack of numerosity or failure to demonstrate the superiority of a class action--then PJH may rely upon that ruling and take advantage of the exception contained within the NASD's rule. Until then, however, PJH must live with the district court's decision to vacate its initial order.

**The applicable SEC rules prohibit "members from attempting to enforce arbitration contracts with customers who are members of a class or putative class unless the customer has clearly opted out or otherwise been excluded by a Court from the class action…Customers may pursue in… arbitration claims that otherwise be in included in a court litigated class action by removing their individual claims from the class action. Exchange Act Release No 34- 31097, 57 Fed. Reg. 40235 at 40236. Accordingly, neither member firms or their associated persons may use an existing arbitration agreement to**

**compel a customer to arbitrate a claim that is encompassed by a class action. 57 Fed. Reg. 52659 at 52660.**

The goals defendants counsel seeks to accomplish defeats the purpose of the PSLRA and the SLUSA which they expressly invoked in removing the McCrary matter from St. Louis City Court. By not agreeing to stay the arbitration and by opposing Mr. Thompson's Motion to Dismiss the FINRA action; Stifel, **sub rosa,** seek to preclude by collateral estopped or res judicata, not only the arbitrability of Mr. Thompson's case, but the substantive allegations and allegations in this matter. See **Allen v. McCurry,** 449 U.S. 90 **(1980), Coffey v Dean Witter Reynolds,** 961 F.2d 922 (10th Cir. 1992).

The claims made to the FINRA Arbitration Panel were then and remain today to be counterfactual and inapposite. Defendants Stifel's only accomplishment in the FINRA Arbitration was to produce Mr. Thompson's account statements which he already possessed. Despite the representations in Exhibit 1 that all the documents would be produced, counsel for Defendant Stifel insists on redactions and confidentiality of the Exception Reports, however, not one additional document has ever been produced. The claim that over 1700 documents were produced at great expense is mirrored by the great expense that Mr. Thompson bore in producing not only those same account statements, but years of account statements dating back to 2003 from A.G. Edwards. The fact that Mr. Thompson claimed expedited consideration for his case is converse to the fact that Stifel refused to arbitrate same within the one (1) year period required.

Rather than ask this Court for the drastic remedy of an injunction, Counsel merely respectfully requests that in light of its attempt to circumvent this Court that Stifel be ordered to respond by way of Motion to Dismiss or a Motion to Compel Arbitration in seven (7) days. This Court cannot be deprived of jurisdiction by a FINRA Panel acting in violation of express SEC rules.

Frankly, the claims that the unredacted Exhibits could not be retrieved, the attempt to rename pleadings (First Amended, Second Amended, Third Amended) filed by leave of Court and Motion of this Court, the request for extension of time under the PSLRA, while filing an Opposition to Mr. Thompson's absolute right to dismiss his FINRA claims under the relevant SEC and FINRA rules are perplexing.

Class actions and putative class actions may not be arbitrated. See Hazen, **Sec.15.1[11] No Arbitration for Class Actions**, Treatise on the Laws of Securities Litigation, Vol.3 pp 378-380 (4th Ed.) (West Group 2002).

.

Respectfully submitted to this Honorable Court this 5th day of April 2010.

/s/L. Steven Goldblatt
**L. Steven Goldblatt EDMO 68327**

**Goldblatt Law Firm**
**8000 Bonhomme Suite 214**
**St. Louis, MO 63105**
**Tel: (314)-288-8455**
**Fax: (314)-569-4010**

**CERTIFICATE OF SERVICE**

**The undersigned hereby certifies that the foregoing was served on the following by operation of the Court's electronic CM/ECF filing system on this 5th day of April , 2010 to:**

**Lisa Neilson Esq.**
**Greensfelder, Hemker & Gale, P.C.**
**10 South Broadway, Ste. 2000**
**St. Louis, MO 63102**